**UNITED STATES of America,**
**v.**
**John CAPRA et al., Defendants.**
**No. 73 Cr. 460.**

United States District Court,
S. D. New York.
Oct. 16, 1973.

Barry I. Slotnick, New York City, for John Capra.

Dennis D. S. McAlevy, Jersey City, N. J., for Leoluca Guarino.

Lawrence K. Feitell, New York City, for Stephen Della Cava.

Leonard J. Levenson, New York City, for Robert Jermain.

David Blackstone, New York City, for George Harris.

Joseph I. Stone, New York City, for Alan Morris.

Paul J. Curran, U. S. Atty., S.D.N.Y., Gerald A. Feffer, Lawrence S. Feld, Asst. U. S. Attys., for the government.

## MEMORANDUM

Re: *Defendant Della Cava*

FRANKEL, District Judge.

Defendant Della Cava, named in a warrant under the instant indictment charging conspiracy to commit narcotics violations and substantive narcotics offenses, was arrested on the early morning of April 14, 1973. The arrest was made when he stopped his automobile for a red light at Lexington Avenue and East 86th Street in New York City and agents who had been following intercepted his vehicle with theirs. The arrest was part of a large-scale "roundup" of alleged narcotics violators in and around New York City. Della Cava had been under surveillance for 15 minutes or so before the arrest, beginning when he emerged from Bachelors III, a restaurant and bar on Lexington Avenue in the east sixties, and walked some two or three blocks north to enter his auto. The arresting officers had determined, however, that the arrest should be made, if possible, at a substantial distance from Bachelors III to avoid alerting other persons scheduled for apprehension in the same operation.

Following his arrest, Della Cava was searched quickly on the scene. As strangers began to gather, the arresting officers took him and his automobile to an underground Sanitation Department garage in the area of West 79th Street and the Hudson River. There, Della Cava's auto was searched. Taking his keys, the officers opened the trunk, where they found, *inter alia*, a brown gym bag and a machine for sealing plastic bags or containers. In the bag, the officers found $13,999 in currency. Later laboratory examination revealed traces of heroin in the bag.

There was no search warrant, and Della Cava did not consent to the search. Contending that the search was illegal, he moves for suppression of the items found in the car truck.

As a first ground, Della Cava claims that the arrest was deliberately delayed to supply a pretext for searching the vehicle. The contention is not supported by the record. On the contrary, the evidence is convincing that the officers were prompted by valid concerns about the effectiveness of their overall arrest assignments and about possible physical dangers if confederates were prematurely alerted. The court has become convinced, not only in the hearing relating to the instant motion, but in allied pretrial hearings, that the network of communications among arrest targets was a wide and swift one. The precautions attending Della Cava's arrest were reasonable and sensible, not pretextual. See McKnight v. United

States, 87 U.S.App.D.C. 151, 183 F.2d 977 (D.C.Cir. 1950).

There remains the question whether the warrantless search was "reasonable" by Fourth Amendment standards. See Cady v. Dombrowski, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973). On this subject of automobile searches, which has not produced a simple and symmetrical jurisprudence, it may not be astonishing that law enforcement officers and counsel lack neat or entirely consistent theories. One officer's report described the search as "incident" to the arrest, but this is not much argued now. The main theory of justification now is that it was an "inventory search," designed to protect both the owner (in his property rights) and the arresting officers (against false charges of depredation). But this justification has little or no support in the record.

Nevertheless, looking at the time, place, and other circumstances of the search, the court finds it reasonable. The vehicle, taken in a narcotics arrest, was thought by the arresting officers to be on its way to being "impounded." The thought was a cogent one; the automobile could readily have been thought subject to forfeiture, and perhaps should have been libeled for that purpose, though it was not. The forfeiture statute, 49 U.S.C. § 781 et seq., makes it unlawful to transport or possess in any vehicle, or to use any vehicle to facilitate the transportation or possession of, contraband. Any narcotic drug which has been acquired or is possessed in violation of any laws of the United States dealing therewith is spe-

cifically defined as contraband. § 781(b)(1). Subject to several exceptions, not material here:

"Any * * * vehicle * * * which has been or is being used in violation of any provision of § 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taken place, shall be seized and forfeited * * *."

49 U.S.C. § 782.

■ Under this statute, therefore, federal officers have a right and duty to seize a vehicle when they have reasonable cause to believe it "has been or is" being used in violation of the law in the transportation of contraband. There is a corollary right to search such a lawfully seized vehicle. See Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed. 2d 730 (1967); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Francolino, 367 F.2d 1013, 1018–1023 (2d Cir. 1963) (alternative holding), cert. denied, 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967); Davida v. United States, 422 F.2d 528 (10th Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970); United States v. Ayers, 426 F. 2d 524, 530 (2d Cir.), cert. denied, 400 U.S. 842, 91 S.Ct. 85, 27 L.Ed.2d 78 (1970); United States v. Lewis, 303 F. Supp. 1394, 1396–1397 (S.D.N.Y.1969).[1]

■ In the case at hand, it is evident that the officers had reasonable cause to believe at the time of the arrest that the vehicle was being (or had been) used in violation of the law regarding transportation of contraband and, therefore, was subject to seizure. Although at the

---

1. See also the Controlled Substances Act of 1970, 21 U.S.C. § 801 et seq., which provides, subject to exceptions not material here, for the forfeiture of all vehicles "which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment" of illegally manufactured, distributed, or acquired controlled substances or of raw materials, products and equipment used in the illegal manufacture and delivery of controlled substances. § 881(a)(4). Any property subject to forfeiture may be seized

by the Attorney General upon process, although seizure without process may be made when

"(1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant." § 881(b)(1).

The regulations promulgated under this section, 31 C.F.R. § 316.71 et seq. (1973), authorize all special agents of the Bureau of Narcotics and Dangerous Drugs to seize such property as may be subject to seizure. *Id.* § 316.72.

pre-trial hearing, the officers tended to downplay their knowledge of Della Cava's alleged involvement in narcotics activities as well as their interest in his vehicle, the realities seem clear enough. Agent Samuels, while working on this particular case for only a month, had learned of Della Cava in a drug context some eight months earlier. Similarly, Detective Eaton had been involved since late 1971 in the investigation which led to the indictments. During that time Eaton had conducted surveillance of this defendant, had monitored wiretap conversations indicating narcotics transactions (including vehicular transportation), and had participated in a prior arrest of this defendant for a narcotics violation. Finally, and not insignificantly, the indictment under which Della Cava was being arrested added to the pertinent showing of "probable cause." Given these circumstances the officers had reason to believe that the defendant's vehicle was subject to seizure under 49 U.S.C. § 782.[2]

Viewing the occasion as we should, from the vantage point of the officers on the spot, we are led to hold that the search "was closely related to the reason [Della Cava] was arrested, the reason his car had been impounded, and the reason it was being retained." Cooper v. California, 386 U.S. 58, 61, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967).[3]

The court concludes, in sum, that the question is a close one, but that the search should on balance be held lawful. Compare United States v. Evans, 385 F.2d 824, 825 (7th Cir. 1967),

with United States v. Stevenson, 409 F. 2d 354, 357 (7th Cir. 1969). Our doubts are perhaps justified by the uncertain state of the controlling authorities. What seems more clear is that police officers do not behave unreasonably when they resolve close questions of this kind in the fashion here presented. Given the somewhat limited "privacy" interest of Della Cava in his auto trunk on the occasion in question, Cady v. Dombrowski, 413 U.S. 433, 442, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 n. (1973), this court is unable to conclude that the things found there must be barred from consideration as evidence.

The motion to suppress is denied. So ordered.

---

2. The fact that forfeiture proceedings were not instituted is pertinent but not decisive; the key inquiry is what were the powers of the officers in the light of what they knew and reasonably believed at the time of the search. See Lockett v. United States, 390 F.2d 168, 172 (9th Cir.), cert. denied, 393 U.S. 877, 89 S.Ct. 175, 21 L.Ed.2d 149 (1968). Although the officers testified that they were "impounding" the vehicle for "safekeeping," their rationale for their right to seize and search the vehicle is not conclusive. "Officers of the law cannot be held to know all of the niceties of the law and if it is determined that their actions have the

sanction of the law, such actions are completely legal for all purposes." Davida v. United States, 422 F.2d 528, 531 (10th Cir.), cert. denied, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970).

3. In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Court impliedly recognized that the presence of contraband may justify a warrantless search of a vehicle. Distinguishing Carroll v. United States, the Court noted that the facts of Coolidge involved "no contraband or stolen goods or weapons * * *." Id. at 462, 91 S.Ct. at 2036.