STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
ANTHONY ERCOLANO, DEFENDANT-RESPONDENT.

Argued May 9, 1978—Decided January 12, 1979.

26

*Mr. Paul A. Massaro,* Assistant Prosecutor, argued the cause for appellant (*Mr. John H. Stamler,* Prosecutor, attorney).

*Mr. William F. Lamb,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

*Mr. David R. Arrajj,* designated counsel, argued the cause for *amicus curiae* Public Defender of New Jersey (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Ezra D. Rosenberg,* Assistant Deputy Public Defender, on the brief).

*Mr. Dennis D. S. McAlevy* did not appear on behalf of respondent but relied on the brief and argument of the *amicus curiae* Public Defender (*Messrs. Russell* and *McAlevy,* attorneys).

The opinion of the court was delivered by

CONFORD, P. J. A. D. (temporarily assigned). We confront here the same general question we dealt with in *State v. Slockbower,* 79 *N. J.* 1, decided this day. That is the matter of the circumstances under which the police in arresting an individual may take custody of his automobile (*i. e.,* impound it) and search it for purposes of making an inventory of its contents. In *State v. Slockbower* the arrest was for a motor vehicle offense. We there held such action by the police was in violation of the federal and State constitutional protections against unreasonable search and seizure "unless the driver either consents or is given a reasonable opportunity to make other arrangements for the custody of the vehicle." *Id.* at 4. Although the arrest here was for conspiracy of bookmaking, we hold the *Slockbower* rule still applicable in the absence of any indication at the time of the purported impoundment that the purpose of the police was anything other than to perform the "community

caretaking functions" mentioned in *South Dakota v. Opperman*, 428 *U. S.* 364, 368 96 *S. Ct.* 3092, 49 *L. Ed.* 2d 1000 (1976). As in *Slockbower*, our holding reflects our interpretation of the requirements both of the Fourth Amendment of the federal Constitution and of the comparable provision of our State Constitution. *N. J. Const.* (1947), Art. I, par. 7.

## I

Defendant was arrested in an apartment on July 7, 1976 on a bookmaking charge. His automobile, properly parked on a street, was towed by the police and later searched without a warrant. Incriminating matter was found. Defendant was indicted along with seven others for conspiracy to commit the crime of bookmaking, contrary to *N. J. S. A.* 2A:98–1(a) and *N. J. S. A.* 2A:112–3, and in a second count for bookmaking, contrary to *N. J. S. A.* 2A:112–3. Thereafter defendant moved before Judge Barbieri in the Law Division to suppress evidence. The judge granted that aspect of the motion which was addressed to lottery slips discovered during the search of defendant's automobile. The Appellate Division denied the State's motion for leave to appeal but this Court granted leave to appeal and consolidated the appeal, for purposes of oral argument alone, with *State v. Slockbower, supra,* a similar question of search and seizure law being presented.

During the early summer of 1976, a bookmaking investigation was taking place in Elizabeth. Electronic surveillance was maintained by the Union County Prosecutor on one Michael Verlingo at 1381 North Avenue, Apartment A–4 in Elizabeth. On June 30, 1976 Detective Lynch of the Prosecutor's Organized Crime/Narcotic Strike Force intercepted a call from an unidentified individual saying that he wanted to pick up his money from Verlingo. Verlingo replied that the caller could pick up his money the following day at 1 P.M. Lynch advised Sergeant Robert Rowland,

leader of the Union County Prosecutor's Gambling Unit Office, concerning the call. Lynch monitored another call on July 7, 1976 indicating that an unidentified caller would see Verlingo at 8 P.M. that evening. Lynch again notified Rowland. This was shortly before search warrants were to be executed on the Verlingo premises.

At the suppression hearing, Lynch indicated that he believed the unidentified callers of June 30 and July 7 were one and the same person. He said that he had heard this voice five to seven times prior to July 7.

After being informed of the June 30 call, the Elizabeth Police Department stationed two detectives at the Verlingo residence on July 1 for the purpose of identifying the party who was scheduled to arrive at 1 P.M. They observed a gray Lincoln Continental pull up to 1381 North Avenue. A man entered the building and emerged five minutes later. The officers ascertained by radio that the vehicle was registered to Enrico Ercolano (defendant's brother), of Jersey City.

A search warrant for the apartment was obtained on July 7, 1976 and planned for execution that evening. The warrant was executed on the evening of that day while police awaited the arrival of the expected visitor. They had orders to arrest him. Defendant arrived at the premises in the same Lincoln automobile which had been observed on July 1. As he entered the building after parking the vehicle at the curb he was arrested on grounds of conspiracy in gambling activity. At the direction of an assistant Union County prosecutor present on the occasion, the police had the car towed to a police garage for its own protection from tampering while its driver was being investigated. It is entirely clear from the testimony of all the State witnesses that the protection of the vehicle was the only purpose of the police in impounding the car. Defendant was subsequently asked for permisison to search the car but refused, saying the vehicle belonged to his brother. It was conceded that the car was legally parked on North Avenue. The street was a residential but well trafficked one. The particular reasons given by the

police for the impoundment at the hearing on the motion to suppress were that the car was new, the thoroughfare was a busy one and the driver was not the owner. Before the car was towed away it was subjected to an "outside" inventory extending to the hubcaps, antennae and "things from the front of the car." No further explication of this was given.

About an hour and a half after the car was towed to police headquarters Sergeant Rowland went to the garage where the car had been placed and searched it, "for the safety of the vehicle"; to make sure it was "in the same shape" as when it was towed away. However, he also said that before entering the vehicle he observed from outside some papers with writing on them on the console between the front seats. He could not read the papers but he "surmised" they might be evidence in the investigation. When the papers were retrieved from the car during the search they were seen to constitute records of amounts owed to or from bettors or bookmakers.

■ Judge Barbieri, for the Law Division, granted defendant's motion to suppress the papers taken from the car. He concluded that the concern purportedly manifested by the police for the safety of the car was not a sufficient justification for its search without a warrant in these circumstances. We agree.

We emphasize preliminarily that at no time in the history of this case has the State contended that the car was searched on probable cause of its containing seizable objects such as fruits, instrumentalities or evidence of crime. Had the State argued such a theory at the motion to suppress it would have been of at least questionable merit on the proofs taken.[1] Sergeant Rowland testified that when the car was impounded he was not "curious to find out whether or not there was any gambling paraphernalia in the car."

---

[1]For reasons set forth in III, below, it is immaterial whether the proven circumstances could have justified a finding of probable cause by the trial judge sustainable on appeal.

If he had been "curious," he said, that would have had
nothing to do with the reason the car was taken — which
was solely for its own protection. If the police had no
probable cause to search the car when it first reached the
North Avenue building, they certainly would have had no
legal ground to search it without a warrant on probable
cause grounds later, after it had been removed to the police
garage, even if factual probable cause existed at the later time
based on the observation of the paper slips. The vehicle was
then no longer mobile and was under control of the police.
A warrant would have been requisite. See *Coolidge v. New
Hampshire,* 403 *U. S.* 443, 462–464, 91 *S. Ct.* 2022, 29
*L. Ed.* 2d 564 (1971); *Chambers v. Maroney,* 399 *U. S.* 42,
51–52, 90 *S. Ct.* 1975, 26 *L. Ed.* 2d 419 (1970).[2]

Thus the validity *vel non* of the search must depend
completely on whether there was a valid impoundment in
relation to which the search constituted a reasonable in-
ventorying of the contents of the vehicle. In this case it
does not appear that an inventory was ever made of the
contents of the vehicle after the retrieval of the gambling
slips. But more important, the impoundment of the car
by the police in the first instance was unreasonable in a
Fourth Amendment or Art. I, par. 7 sense because not reason-
ably necessary for community safekeeping purposes as against
an appropriate regard for the privacy interests of the driver
of the car.

In our opinion in *State v. Slockbower, supra,* we reviewed
the impoundment-inventory cases throughout the country,
including *South Dakota v. Opperman, supra,* and concluded
that the most soundly reasoned of them "insisted upon a
factual showing of substantial police need, in the light of
the constitutional regard for the privacy interests of auto-

---

[2]Under III, below, we discuss at greater length and reject the
position of the dissent that if probable cause to search the vehicle
existed when it was impounded the later search is valid under the
"automobile exception" to the warrant requirement.

mobile drivers, before approving the impoundment of a motor vehicle." 79 *N. J.* at 8. In particular we approved the rationale of a number of such cases, developed with a sense of balancing the right of privacy against legitimate police safekeeping functions, "that if the circumstances that bring a vehicle properly to the attention of the police are such that its driver, even though arrested, is able to make his own arrangements for its custody, or if the vehicle can be conveniently parked and locked without constituting an obstruction of traffic or other public danger, the police should permit that action to be taken rather than impound it against the will of the driver and thereafter search it routinely" *Id.* at 9.

Application of the foregoing principles to the instant case fully justifies the grant of the motion to suppress. The taking of the car by the police and its search were unreasonable as against both the Fourth Amendment and *N. J. Const.* (1947), Art. I, par. 7. Leaving the properly parked and locked car on the street where defendant had left it, for a reasonable period of time, presented no more danger to the car and its contents than if defendant had been on a legitimate visit to a tenant in the apartment house. In the meantime, and until he could obtain release on bail, defendant should have been afforded an opportunity to telephone his brother or others to assume custody of the car. Absent such action by the police, their seizure of the car was illegal, and so must be the inseparable concomitant thereof, the later search of the vehicle. *Wong Sun v. United States,* 371 *U. S.* 471, 485–486, 83 *S. Ct.* 407, 9 *L. Ed.* 2d 441 (1963).

■■ The Attorney General as *amicus curiae* raises the contention, never made by the Prosecutor, that the taking of the betting slips out of the car can be defended on the "plain view" doctrine. Passing the consideration that we do not ordinarily accept issues for appellate argument not posed at trial level and that if the issue were now entertained it would have to be remanded for a hearing so as to give defendant due opportunity to contest it on the evidence, we

conclude the point lacks merit as a matter of law. The applicability of the plain view doctrine depends upon the right of the officer "to be in the position to have that view," *Harris v. United States,* 390 *U. S.* 234, 236, 88 *S. Ct.* 992, 993, 19 *L. Ed.* 2d 1067 (1968); *Coolidge v. New Hampshire, supra,* 403 *U. S.* at 466, 91 *S. Ct.* 2022. Here the police did not have the right to be in the position to have the view of the slips when they saw them. For the reasons already set forth, their assumption of control of the car was illegal. Had they complied with defendant's rights in the manner set forth above, the car presumably would not have been available for the so-called plain view. Secondly, the observation of the slips was not the result of an "inadvertent" viewing by the police of the interior of the car while conducting a lawful search activity, but of a purposeful inspection of it from the outside, clearly for investigative purposes. This is in violation of the legitimate boundaries of the plain view doctrine, as explained in *Coolidge v. New Hampshire, supra,* 403 *U. S.* at 466–471, 91 *S. Ct.* 2022.

■ Finally, the State makes another belated argument, never proffered at motion level, that the slips "would have been discovered even if the custody of the vehicles was improper." Again, a remand for hearing would be required if the contention were colorable. There is some authority that if items in fact discovered by the police as a direct result of illegal police activity, and therefore normally subject to exclusion from evidence under the "fruits" doctrine, would have "inevitably" been discovered by the police even if the illegality had never taken place, the items will be admissible. See *Government of the Virgin Islands v. Gereau,* 502 *F.* 2d 914 (3 Cir. 1974), *cert.* den. 420 *U. S.* 909, 95 *S. Ct.* 829, 42 *L. Ed.* 2d 839 (1975); *People v. Fitzpatrick,* 32 *N. Y.* 2d 499, 346 *N. Y. S.* 2d 793, 300 *N. E.* 2d 139 (Ct. App. 1973), *cert.* den. 414 *U. S.* 1050, 94 *S. Ct.* 554, 38 *L. Ed.* 2d 338 (1973). But *cf. United States v. Paroutian,* 299 *F.* 2d 486 (2 Cir. 1962).

We need not consider whether the principle stated is a proper exception to the exclusionary rule. It is not applicable here. The police never saw these slips until after they had illegally impounded the car although they had made a previous search of its exterior. Had they not impounded the vehicle, there is no probable, let alone, "inevitable" predicate for the hypothesis that they would have found the slips. For the same reasons as discussed above in relation to the "plain view" contention, the slips would have been beyond the purview of the prosecutor's investigation had defendant's right to have his car left undisturbed by the police been respected.

The search of the car was illegal, and the evidence taken therefrom was properly suppressed.[3]

## II

Justice Schreiber's dissent proposes that in considering the validity of this search the Court may properly ignore the facts established at the hearing as to the basis for the officers' action discussed above and remand for a new hearing and findings as to whether there was probable cause (in an abstract sense) for the search of the automobile. This without regard to whether the officers believed probable cause existed and their search of the car was pursuant to such hypothetical probable cause, or whether, to the contrary, for purely investigatory or other invalid purposes. Upon a hypothetical

---

[3]No one contends that the search was incidental to the arrest of defendant. It could not have been, having taken place at a different time and place. *Preston v. United States*, 376 *U. S.* 364, 367, 84 *S. Ct.* 881, 11 *L. Ed.* 2d 777 (1964) ; *Chimel v. California*, 395 *U. S.* 752, 763-764, 89 *S. Ct.* 2034, 23 *L. Ed.* 2d 685 (1969). Yet the dissent of Justice Handler, without using the phrase "search incidental to arrest," appears basically to invoke an analogous rationale: "The * * * inquiry at the motion to suppress * * * should have been whether the search of the automobile * * * flowed from and was connected with [defendant's] lawful arrest * * *." (p. 72). This seems a circuitous evasion of *Chimel* and *Preston*, *supra*.

finding by the trial court that probable cause existed, the dissent would validate the search on the basis of the automobile exception to the warrant requirement. Respect for the earnestly held views of the dissenting members of the Court impels a response. We propose first to show that a remand for that purpose would be inappropriate, and, in the next section of this opinion, that even on the premise assumed by the dissent the automobile exception would not be effective to validate the search.

We begin with the preliminary observation that law enforcement is the obligation of the Executive branch of government and that the function of the Judiciary is the dispassionate and even-handed adjudication of the respective rights of the State and the accused defendant. In that regard, there is no more solemn responsibility of the courts than the vindication of the rights of all citizens under the Bill of Rights of both the federal and State constitutions, including the provisions respecting unreasonable searches and seizures. *State v. Macri,* 39 *N. J.* 250, 265 (1963). It would thus seem at least anomalous, in a controversy over the claimed violation of the defendant's right of privacy under both constitutions, that this Court, without any argument by the State to that effect at any stage of the litigation, should on its own motion inject into the case a hypothetical issue of probable cause which the proofs demonstrate conclusively was never entertained by the police when dealing with defendant's vehicle.

The dissent suggests that the intent and purpose of the seizing and searching officers is irrelevant to the validity of their action. That view is both inconsistent with the rationale of the exclusionary rule and contrary to the best reasoned of the authoritative decisions.

█ It is indisputable that the exclusionary rule, to which the states are bound under *Mapp v. Ohio,* 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed.* 2d 1081 (1961), was devised to deter the police from unconstitutional searches and seizures be-

cause other remedies were deemed ineffective. As there stated, citing earlier language of the Court, the purpose of the exclusionary rule "is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it." *Id.* at 656, 81 *S. Ct.* at 1692; see also *Terry v. Ohio,* 392 *U. S.* 1, 12, 88 *S. Ct.* 1868, 20 *L. Ed.* 2d 889 (1968). It follows from this that if in the present case the police were *intending* only a safekeeping impoundment of the Ercolano vehicle, which as a matter of constitutional law was invalid under our *Slock-bower* holding of today, the rationale of deterrence of unconstitutional police conduct compels exclusion of the evidence here seized. Saving the validity of the police action on a *court-devised* theory of justification would not deter future unconstitutional impoundments of vehicles or investigatory entries into vehicles without lawful warrant.

The intent and purpose of the police in conducting a search has frequently been held material to the validity thereof. A leading example is the oft-cited case of *Jones v. United States,* 357 *U. S.* 493, 78 *S. Ct.* 1253, 2 *L. Ed.* 2d 1514 (1958). There, government agents forcibly entered a home at night with a daytime search warrant intending to search the house and seize articles expected to be found there in the operation of an illegal still. The articles found were used in convicting the owner of the house who was not present during the search. The Court held the search invalid on the ground that mere probable cause of the presence therein of seizable objects did not suffice to permit search of a house without a valid search warrant. The Government had argued that it was "rational to infer" that the agents had entered the house with intent to arrest defendant and with such intent they could legally seize the illicit equipment in plain sight. *Id.* at 499, 78 *S. Ct.* 1253. The Court rejected the argument on the ground that "the record fails to support the theory now advanced by the Government. The testimony of the federal officers makes clear beyond dispute

that *their purpose* in entering was to search for distilling equipment and not to arrest petitioner." (emphasis added) *Id.* at 500, 78 *S. Ct.* at 1257.

It is quite evident that the Supreme Court could have validated the search in *Jones* by adopting the approach of the present dissenters. It could merely have said that it would judge the actions of the agents by *assuming* they had the intent to arrest when entering the house — an intent which would have been entirely warranted on the objective facts known to the agents. But it is evident that the Court would have regarded such an evasion of the true facts as lending authority to an invalid search. The actual intent of the officers was regarded as fatal to the search as a matter of law.

*Jones v. United States, supra,* was followed in respect of the significance of the intent of the searching officers by our Appellate Division in *State v. Baker,* 112 *N. J. Super.* 351, 356–357 (1970), which in turn was followed by this Court in *State v. Sims,* 75 *N. J.* 337, 353 (1978). As stated by Justice Pashman in the *Sims* case: "* * * in order for a search to be justified as incidental to a valid arrest, there must have been an *intention* on the part of the officers to arrest on the information possessed by them prior to the search, without regard to what the search might disclose." (emphasis added) *Id.* at 353. Thus, also in *State v. Doyle,* 42 *N. J.* 334, 342 (1964), this Court said: "Officers cannot search *in order* to arrest, nor arrest because of the product of the search. A search undertaken merely *for the purpose* of uncovering evidence with which to arrest and convict of crime is not made lawful because the desired evidence is obtained" (emphasis added).

While the points of substantive search law involved in the foregoing cases were different from that in the instant case, the principle that the intent and purpose of the searching officers may be material, indeed crucial, to the validity of the search, is fully applicable here. The courts in the cited cases refused to supply a non-existent intent or state of

mind on the part of the officers to save the validity of the searches in those cases, and this Court will not do so here.

■ The intent and purpose of the police can validate as well as impugn a seizure and search. In *Cady v. Dombrowski,* 413 *U. S.* 433, 93 *S. Ct.* 2523, 37 *L. Ed.* 2d 706 (1973), the police searched the trunk of the car of an off-duty policeman arrested for drunken driving. The purpose of searching the trunk was to find the officer's gun in order to prevent its coming into the hands of others, *i. e.,* in execution of the "community caretaking functions" of the police and not for the purpose of discovering criminal evidence. *Id.* at 441, 93 *S. Ct.* 2523. Thus the exigent purposes of the warrantless search saved its validity.

■ The dissent cites cases declaring, in one form or another, that the objective facts rather than the searching officers' appraisal of them should control the determination of the existence of probable cause to validate a search. (pp. 35 –37). For example, in *Guzman v. Estelle,* 493 *F.* 2d 532, 536, n. 13 (5 Cir. 1974) : "The test of probable cause is not the articulation of the policeman's subjective theory but the objective view of the facts." We would not disagree that where police officers are conducting a search under an appropriate exception to the warrant requirement the existence of probable cause will be judged by a reviewing court on the basis of an objective view of the facts as they would appear to a man of reasonable caution ; *Terry v. Ohio, supra,* 392 *U. S.* at 21, 88 *S. Ct.* 1868 ; *Brinegar v. United States,* 338 *U. S.* 160, 175, 69 *S. Ct.* 1302, 93 *L. Ed.* 1879 (1949) ; *State v. Sims, supra,* 75 *N. J.* at 354 ; and this whatever the officer's own estimate of the strength of the probability or his mental articulation of the underlying facts, see *White v. United States,* 448 *F.* 2d 250, 254 (8 Cir. 1971), *cert.* den. 405 *U. S.* 926, 92 *S. Ct.* 974, 30 *L. Ed.* 2d 798 (1972) ; *Dodd v. Beto,* 435 *F.* 2d 868, 870 (5 Cir. 1970), *cert.* den. 404 *U. S.* 845, 92 *S. Ct.* 145, 30 *L. Ed.* 2d 81 (1971).

■ But the cases and principles relied upon by the dissent cannot, with any degree of faithfulness to the constitutional principles implicated or to the theory of the exclusionary rule, operate to validate the instant search. A foothold for validity cannot be constructed on the basis of abstract probable cause in the mind of the Court alone, a warrantless seizure not at all purported to rest on probable cause but only on the community safekeeping function of the police, and a warrantless search, similarly not based on probable cause, but solely on suspicion and purely investigatory and exploratory in nature. See *Coolidge v. New Hampshire, supra,* 403 *U. S.* at 466, 91 *S. Ct.* 2022.

## III

■ Finally, it is our opinion as a matter of both state and federal constitutional law that this search would not be valid even were we to assume a finding on remand that the officers had probable cause to believe the automobile contained seizable objects at the time defendant was arrested in the apartment house. The contrary thesis is entertained by Justice Schreiber's dissent on the basis of the so-called automobile exception to the warrant requirement of the state and federal constitutions. This exception has given the courts in recent years considerable difficulty as the pressure for law-enforcement in relation to automobile connected crime collides with the privacy interests of the public at large in motor vehicles. See Miles & Wefing, "The Automobile Search and the Fourth Amendment: A Troubled Relationship," 4 *Seton Hall L. Rev.* 105 (1972); Note "Warrantless Searches and Seizures of Automobiles," 87 *Harv. L. Rev.* 835 (1974); Moylan, "The Inventory Search of an Automobile: A Willing Suspension of Disbelief," 5 *Balt. L. Rev.* 203 (1976).

■ In our view, the most soundly reasoned of the judicial opinions in this area are those which are most faithful to and consistent with the basic precept of the Fourth

Amendment that any warrantless search is *prima facie* invalid and gains validity only if it comes within one of the specific exceptions created by the United States Supreme Court. There can be no doubt as to the current authoritativeness of that concept. *Marshall v. Barlow's Inc.,* 436 *U. S.* 307, 313, 98 *S. Ct.* 1816, 56 *L. Ed.* 2d 305 (1978); *Schneckloth v. Bustamonte,* 412 *U. S.* 218, 219, 93 *S. Ct.* 2041, 36 *L. Ed.* 2d 854 (1973); *Wyman v. James,* 400 *U. S.* 309, 317, 91 *S. Ct.* 381, 27 *L. Ed.* 2d 408 (1971); *Vale v. Louisiana,* 399 *U. S.* 30, 34, 90 *S. Ct.* 1969, 26 *L. Ed.* 2d 409 (1970); *Katz v. United States,* 389 *U. S.* 347, 357, 88 *S. Ct.* 507, 19 *L. Ed.* 2d 576 (1967). This Court has recently expressly embraced that doctrine. *State v. Sims, supra,* 75 *N. J.* at 351. The exceptions were developed by the Court in specific categories of situations where strong considerations of law enforcement and public safety impelled a suspension of the normal high value embedded in the constitutions that probable cause for a search or seizure should be determined in advance by a neutral judicial officer rather than by a law enforcement agent in the course of detection of crime. That high value was best expressed in *McDonald v. United States,* 335 *U. S.* 451, 455–456, 69 *S. Ct.* 191, 93 *L. Ed.* 153 (1948), in a passage quoted in full in *Chimel v. California, supra,* 395 *U. S.* at 761, 89 *S. Ct.* at 2039, as follows:

We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. * * * And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant *without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.* (emphasis added)

That automobiles, in broad principle, are included within the protection of the foregoing rationale of the warrant requirement is made clear in *Coolidge v. New Hampshire, supra,* 403 *U. S.* at 462, 91 *S. Ct.* 2022, and in *Chambers v. Maroney, supra,* 399 *U. S.* at 50, 90 *S. Ct.* 1975.

It follows as a corollary of the foregoing rationale of the warrant requirement that the common thread of the developed exceptions to that requirement is the impracticality of obtaining a warrant in the particular law-enforcement or public safety exigency presented. *Chimel v. California, supra,* 395 *U. S.* at 758–767, 89 *S. Ct.* 2034; *Trupiano v. United States,* 334 *U. S.* 699, 706–707, 68 *S. Ct.* 1229, 92 *L. Ed.* 1663 (1948).[4]

The automobile exception to the warrant requirement had its genesis in *Carroll v. United States,* 267 *U. S.* 132, 45 *S. Ct.* 280, 69 *L. Ed.* 543 (1925), where a moving vehicle was held subject to seizure and search by federal officers having probable cause to believe it was transporting contraband. The Court held a warrant was dispensable in circumstances "where it is not practicable to secure a war-

---

[4]For a period of time the Supreme Court regressed to the philosophy that the criterion of the validity of a warrantless search was whether it was "reasonable," not whether the failure to obtain a warrant was reasonable. *United States v. Rabinowitz,* 339 *U. S.* 56, 66, 70 *S. Ct.* 430, 94 *L. Ed.* 653 (1950). But that view was resoundingly repudiated by the Court in *Chimel v. California, supra,* which held that all searches, except for certain "well recognized exceptions," could be made "only under the authority of a search warrant." 395 *U. S.* at 763, 89 *S. Ct.* at 2040. As indicated above, that continues to be the view of the Supreme Court and of this Court.

One does find general allusions to "reasonableness" in the cases, but these are characteristically when the Court is considering whether to enlarge or narrow the "exceptions" or create a new one. See, *e. g., Terry v. Ohio, supra,* 392 *U. S.* at 8–10, 89 *S. Ct.* 1868 (the "stop and frisk" exception); *Warden, Maryland Penitentiary v. Hayden,* 387 *U. S.* 294, 298–299, 87 *S. Ct.* 1642, 18 *L. Ed.* 2d 782 (1967) (the "hot pursuit" type of exigent circumstance exception); *Chimel v. California, supra,* 395 *U. S.* at 764–765, 89 *S. Ct.* 2034 (search incident to arrest).

rant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." 267 *U. S.* at 153, 45 *S. Ct.* at 285. The Court emphasized, however, that "[i]n cases where the securing of a warrant is reasonably practicable, it must be used * * *." 267 *U. S.* at 156, 45 *S. Ct.* at 286.

*Chambers v. Maroney, supra,* took the *Carroll* rule one step further by holding that once the police stopped a car on the highway on probable cause (there based upon a just perpetrated gas station robbery) they could validly delay the search of the car, which they had the right to conduct on the spot, until they had brought it to the police station. But the Court emphasized in *Chambers* that the circumstances justifying the warrantless search must appear to be such that "the opportunity to search is fleeting since [the] car is readily movable." 399 *U. S.* at 51, 90 *S. Ct.* at 1981. As the rule has been formulated by this Court, "[b]ecause of its mobility a motor vehicle which has been stopped on a highway may be searched without a warrant when probable cause exists." *State v. Waltz,* 61 *N. J.* 83, 88 (1972). There was a vigorous dissent by Justice Harlan in *Chambers,* 399 *U. S.* at 55, 90 *S. Ct.* 1975, based upon the fact that once the police had the vehicle under control, having arrested the occupants, there was no justification in failing to apply for a search warrant. He disagreed with the position of the majority that detaining the vehicle while seeking a warrant, which would have been necessary to prevent loss of the contents of the vehicle, *id.* at 51, 90 *S. Ct.* 1975, was as serious an intrusion on Fourth Amendment values as searching the vehicle without a warrant. *Id.* at 63–64, 90 *S. Ct.* 1975. We need express no opinion as to whether the view of Justice Harlan comports with our own evaluation of *N. J. Const.* (1947), Art. I, par. 7 since the search here, for reasons later to be stated, was invalid even accepting the holding in *Chambers* and assuming probable cause.

The corollary of *Carroll* and *Chambers* — that a car which is not readily movable when the police come upon it cannot be searched without a warrant, notwithstanding probable cause — is exemplified by the reasoning of Justice Stewart, writing the prevailing opinion in *Coolidge v. New Hampshire, supra.* There it was held that although the police had probable cause to believe evidence of murder was contained in defendant's automobile parked in his driveway, the car was not subject to a valid warrantless search under the *Carroll* doctrine because the defendant was simultaneously arrested and his wife was required to leave the house, and the car was therefore not readily movable. 403 *U. S.* at 460–461, 91 *S. Ct.* 2022. The Court said: "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Id.* at 461, 91 *S. Ct.* at 2035. The case, said the Court, was not one in which "it is not practicable to secure a warrant, * * * the 'automobile exception' * * * is simply irrelevant." *Id.* at 462, 91 *S. Ct.* at 2036. The product of the search of the car was held suppressible. This Court has also read *Coolidge* to require a search warrant for an automobile where reasonably practicable. *State v. LaPorte,* 62 *N. J.* 312, 317 (1973). Indeed *Chambers* itself, strongly relied upon by the dissent, warns that:

Neither *Carroll, supra,* nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords.
399 *U. S.* at 50, 90 *S. Ct.* at 1980.

But Justice White in *Chambers* went on to point out that "the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable * * * [and] the opportunity to search is fleeting since a car is readily movable." (emphasis added) *Id.* at 50–51, 90 *S. Ct.* at 1981. Therefore, "[w]here this is true," as in the case then before the Court and in *Carroll,*

the search may be made on probable cause without a warrant. *Ibid.*

In other words, reading *Coolidge, Carroll* and *Chambers* together, the key to the exception from the warrant requirement lies in the mobility of the vehicle and the impracticality of previously obtaining a warrant under the circumstances then obtaining.

It is appropriate then to apply the foregoing plain rationale of the Fourth Amendment warrant requirement to the facts of the present case.

Firstly, the instant case does not present a situation wherein the police have seized a moving car, as in *Carroll* and *Chambers,* or one readily movable. Compare *Texas v. White,* 423 *U. S.* 67, 96 *S. Ct.* 304, 46 *L. Ed.* 2d 209 (1975), cited in Justice Schreiber's dissent, where the police apprehended an individual in his car in the act of trying to cash a forged check at a bank window (the facts are set forth in 521 *S. W.* 2d 255 (Tex. Ct. App. 1975)). The car in *Texas v. White* was obviously readily movable when the police came upon it. In the instant case the vehicle was not readily movable nor had the police stopped it while moving. The defendant had parked the car on the street and entered the apartment house where he was awaited by police who intended to and did arrest him immediately upon his arrival there, searched him and took his car keys. At no time after the defendant exited the vehicle was this car one which was moving or likely to be readily movable. Having at once arrested defendant, the police could, without fear of losing the car, have obtained a search warrant for it and have satisfied the Fourth Amendment and *Const.* (1947), Art. I, par. 20. *Coolidge* is directly authoritative.

Second, the obtaining of a search warrant for this vehicle (assuming probable cause) was readily practicable. The police *did* obtain a search warrant for the Verlingo premises in advance of defendant's expected arrival at 8 P.M. on July 7. This was because they had learned by electronic monitoring

of the Verlingo telephone earlier that day that defendant would arrive at the Verlingo apartment at 8 P.M. That warrant was undoubtedly based upon the ample evidence of probable cause of gambling activity involving defendant and Verlingo. If, as the dissent vigorously avers, there was probable cause to search the vehicle upon defendant's arrival at the apartment, that same probable cause made it readily feasible for the police to have applied for a search warrant for the vehicle at the same time as the search warrant for the apartment. Indeed, the police knew for more than a week that defendant had been visiting Verlingo using the same automobile, and they certainly had probable cause to believe that he was implicated in the conspiracy. Thus, if there was also probable cause to believe that objects connected with the conspiracy were contained in that car, the police had that information all during the same extended period. Paraphrasing *Chambers, supra,* "the circumstances" giving rise to probable cause to search this car were *not* unforeseeable. 399 *U. S.* at 50–51, 90 *S. Ct.* 1975. See also *Niro v. United States,* 388 *F.* 2d 535 (1 Cir. 1968) where the Court said:

If no penalty will ever attach to a failure to seek a warrant, as distinguished from the officers making their own, correct, determination of probable cause, warrants will never be sought, at least when the search is expected to be accompanied by an arrest.

We think it proper to say that while the failure to obtain a warrant when one could readily have been had is not of necessity fatal to a search or seizure concomitant with an arrest the nature of which had been fully anticipated, it will be fatal unless there are at least some countervailing factors. We need not define such circumstances. In the case at bar we find none. We hold that the government cannot rely upon an expected arrest to seize stolen goods, the presence of which it long had probable cause to know of, simply to avoid the inconvenience of obtaining a search warrant. 388 *F.* 2d at 539–540.

We indorse the point of view thus expressed, which is fully consonant with the decisions of the Supreme Court discussed above, and we deem it equally applicable to the case at hand. If there was probable cause here there was no excuse

for not obtaining a search warrant for the car either in advance or after defendant's arrest.

Of the other decisions discussed in Justice Schreiber's dissent we find none persuasive of a result different from that here arrived at. *Cardwell v. Lewis*, 417 *U. S.* 583, 94 *S. Ct.* 2464, 41 *L. Ed.* 2d 325 (1974), warrants some comment. In *Cardwell*, the defendant was arrested for murder after being summoned to police headquarters to discuss the case. He had left his car nearby in a parking lot. The police had reason to believe that he had used the car in connection with murder of a victim whose own auto had been pushed down a river embankment after the victim was shot. During the interview the police demanded the defendant's keys and removed his car to a police impoundment lot. There, they examined the tire tracks and the paint of the car and found that both matched tire tracks at the scene of the crime and paint marks found on the victim's vehicle. This evidence was instrumental in obtaining the defendant's conviction. The Ohio state courts rejected the defendant's claim of illegality of the search and seizure. A federal judge on *habeas corpus* held the search and seizure invalid, a ruling sustained on appeal, but reversed by the United States Supreme Court. A fifth vote for reversal was supplied by Justice Powell who did not discuss the merits of the search question but ruled that the federal courts should not have take jurisdiction on *habeas corpus* when ample review of the constitutional question had been had in the state courts. *Id.* at 596, 94 *S. Ct.* 2464. Four members of the Court, in a dissenting opinion by Justice Stewart, held the search and seizure invalid on the ground that the defendant's vehicle was not movable after his arrest and that therefore the automobile exception to the warrant requirement did not apply. *Id.* at 596–599, 94 *S. Ct.* 2464.

The plurality opinion of Justice Blackmun in *Cardwell* emphasizes that there was no search of the interior of the vehicle but only an examination of its exterior and that

therefore no considerations pertinent to the owner's privacy were implicated by the search. *Id.* at 588–589, 94 *S. Ct.* 2464. As to the seizure of the vehicle, which preceded the inspection of the tires and the paint, Justice Blackmun undertook a general depreciation of the inviolability of automobiles from warrantless searches, *id.* at 592–595, 94 *S. Ct.* 2464, but gave lip service to the requirement of mobility by pointing out that there was evidence that the defendant had asked his attorney at the police station to have his wife take the car away, so that there was, in the Justice's view, a danger that the car could be moved. *Id.* at 595, 94 *S. Ct.* 2464.

It should be obvious from what we have already said that we find the reasoning of the four members of the Court for whom Justice Stewart wrote in *Cardwell* more faithful to the authoritative precedents expounding the rationale of the Fourth Amendment than that of Justice Blackmun, speaking for the prevailing plurality of four. Justice Stewart's views are also more consonant with our own interpretation of the intent of *N. J. Const.* (1947), Art. I, par. 7. *Cf. State v. Johnson*, 68 *N. J.* 349, 353–354 (1975).

Summarizing our position on this phase of the issues, we hold that even if there was probable cause at the time of defendant's arrest the search of the car without a warrant was invalid because the car was neither moving nor readily movable when seized and because the securing of a search warrant therefor in advance was easily feasible.

Judgment affirmed.

PASHMAN, J., concurring. I concur in Parts II and III of the Court's opinion and the result which it has reached. There were no circumstances here present which justified the impoundment of defendant's motor vehicle. The inventory conducted subsequent to this seizure therefore constituted an unlawful search. Hence, the fruits of that search must be suppressed. *See Mapp v. Ohio*, 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed.* 2d 1081 (1961).

I am also in general agreement with much of the Court's reasoning in Part I of its opinion. However, for reasons to be discussed below, I believe that the manner in which the Court has phrased its "test" of the legality of vehicular impoundments may be misleading to law enforcement officials. I therefore write separately to make clear my position on that subject. Finally, I wish to comment upon a matter explicitly left unresolved by the Court — the validity of a routine police inventory subsequent to a legal impoundment. My views are based upon an interpretation of Art. I, par. 7 of the New Jersey Constitution.

I

As my Brother Conford forcefully notes, motor vehicles "constitute areas of privacy of persons and effects within the general protection of the Fourth Amendment and our own Constitution." *See State v. Slockbower,* 79 *N. J.* 1, 7 (1979). Absent the driver's consent or the presence of a search warrant, a "substantial police need" must therefore exist before a vehicle can be seized (impounded) by law enforcement officials. See *ante* at 33; *State v. Slockbower, supra,* 79 *N. J.* at 8.

The Ercolano vehicle was lawfully parked at the time of its seizure. The police have not maintained that they had probable cause to believe that the car contained evidence of or constituted an instrumentality or fruit of a crime. Being legally parked, it did not constitute a public nuisance. Nevertheless, over the objection of defendant, who was operating the vehicle with the permission of its owner, the police subjected the vehicle to impoundment and thereby impermissibly invaded defendant's justifiable expectations of privacy.

This seizure was unnecessary to the attainment of any lawful police objective and hence was illegal. Since the evidence here at issue was uncovered through a search of the vehicle subsequent to this illegal seizure, that evidence must be sup-

pressed. *Wong Sun v. United States,* 371 *U. S.* 471, 485–486, 83 *S. Ct.* 407, 9 *L. Ed.* 2d 441 (1963).[1]

My only reservation with respect to the Court's opinion in this regard is the manner in which it has phrased its "impoundment test." According to the Court, "[impoundment is impermissible] unless the driver either consents or is given a reasonable opportunity to make other arrangements *for the custody* of the vehicle." See *ante* at 29; *State v. Slockbower, supra,* 79 *N. J.* at 4 (emphasis supplied). This phraseology, when considered in conjunction with the Court's mention of the residential and well-trafficked character of the area in which defendant's vehicle was seized, see *ante* at 31–32, 34 may give the impression that a lawfully parked vehicle can be impounded if police reasonably believe that the vehicle will be vandalized if not removed and the driver cannot arrange for a third party to pick up the vehicle. Although I do not believe that the Court subscribes to such a result, I write separately lest there exist any ambiguity as to my position.

So long as the only potential danger that might ensue from non-impoundment is danger to the safety of the vehicle and its contents, no "substantial police need" exists justifying seizure of the vehicle over the objection of its owner (or one operating the vehicle with the owner's permission). Since the vehicle is legally in his custody, the driver — even though arrested — is competent to decide whether to park the vehicle in a "bad" neighborhood and risk damage through vandalism or allow the police to take custody. Only when the vehicle, if not removed, poses a danger to other persons, property or the public safety does there exist a "substantial police need" justifying impoundment if the driver is unable to arrange for a third party to provide for the vehicle's removal.

---

[1] I concur in the Court's decision that the evidence uncovered during the search cannot be upheld under the plain view doctrine for substantially the reasons given by Judge Conford. See *ante* at 34–35.

Thus, absent a warrant, impoundment of a vehicle subsequent to its driver's arrest is permissible in only four types of situations: (1) the driver consents to the impoundment; (2) the vehicle, if not removed, constitutes a danger to other persons or property or the public safety, *and* the driver cannot arrange for alternate means of removal; (3) the police have probable cause to believe both that the vehicle constitutes an instrumentality or fruit of a crime and that absent immediate impoundment, the vehicle will be removed by a third party; or (4) the police have probable cause to believe that the vehicle contains evidence of a crime and that absent immediate impoundment, the evidence will be lost or destroyed. *See, e. g., Coolidge v. New Hampshire,* 403 *U. S.* 443, 91 *S. Ct.* 2022, 29 *L. Ed.* 2d 564 (1971); *Chambers v. Maroney,* 399 *U. S.* 42, 51–52, 90 *S. Ct.* 1975, 26 *L. Ed.* 2d 419 (1970).

## II

A more difficult question — one explicitly left unresolved by the Court, *see State v. Slockbower, supra,* 79 *N. J.* at 15–16 — is the legality of a routine police inventory of a vehicle subsequent to a lawful impoundment. Although not necessary to the disposition of this case, the state of the law on this question is sufficiently confused as to compel me to address the issue.

Mere legal custody of an automobile by law enforcement officials does not automatically create a right to search its interior. *See, e. g., Mozzetti v. Superior Court,* 4 *Cal.* 3d 699, 94 *Cal. Rptr.* 412, 484 *P.* 2d 84 (Sup. Ct. 1971); *State v. Bradshaw,* 41 *Ohio App.* 2d 48, 322 *N. E.* 2d 311 (Ct. App. 1974). A routine police inventory of the contents of an impounded vehicle constitutes a substantial invasion into the owner's zone of privacy — an invasion additional to the intrusion upon his privacy interests occasioned by the impoundment itself. Consequently, such an inventory is impermissible unless the driver consents or a "substantial police need" justifies the search.

If a vehicle is legally impounded and its owner (or one who is operating the vehicle with the owner's permission) is present or otherwise known at the time the vehicle is seized, no such need is manifest. If the driver does not consent to a routine inventory, he will assume the risk that items contained in the vehicle will be lost or stolen. The police in such a case should merely lock up the vehicle and leave it in place until the owner makes suitable arrangements for its removal. Concomitant with this right to prevent a routine inventory is the driver's right to have a representative present during any inventory that is authorized and his right to limit the inventory to only specified portions of the vehicle (*e. g.,* the trunk).

If the police have probable cause to believe that the vehicle contains evidence or constitutes a fruit or instrumentality of a crime, they must procure a warrant in order to conduct a search over the driver's objection. In such a case, the police can prevent the driver from arranging for the removal of the vehicle until a reasonable time has elapsed in which a warrant can be secured. Since the vehicle is under police custody, there is no danger that any evidence it contains will be lost or stolen, and hence no necessity to depart from the warrant requirement. If a warrant cannot be obtained, no inventory can be undertaken unless the driver consents.

In the present case the driver of the seized vehicle was present at the time of the impoundment. Since neither a search warrant nor his consent was obtained prior to the routine inventory, the inventory would have constituted an illegal search even had the car been lawfully impounded. Hence, an additional reason exists for suppressing the evidence thereby uncovered.

A determination of the circumstances under which there would exist the "substantial police need" to justify an inventory of a lawfully impounded vehicle whose driver is not present or known at the time of impoundment is a matter which should await a future case.

Accordingly, I concur in the result reached by the Court.

SCHREIBER, J., dissenting. In this case the public interest in having all relevant and material evidence presented to a jury in a criminal proceeding has been subordinated to an unwarranted interpretation of the search and seizure clause of the federal constitution.[1] The judicial sanction of suppression which the prevailing opinion imposes may cause the withholding of relevant and material evidence of a crime from a jury whose task it is to determine the truth.[2] I cannot agree with the plurality's claim that the evidence and inferences to be drawn could not, upon a proper formulation of the issues, justify a finding of probable cause to search the car. Nor do I agree with its refusal to consider, in addition to the reasons given at the scene, the facts known to the police at the time defendant was arrested and the car was impounded as the determinative element for deciding whether probable cause existed. I would remand this matter to the trial court to make factual findings, after giving the parties the opportunity to supplement the record, on the issue of whether there was probable cause to search defendant's automobile at the time of the arrest and search of the defendant.

---

[1] The plurality has also relied upon Art. 1, par. 7 of the New Jersey Constitution, but its analysis is almost exclusively based upon the federal cases and it has advanced no reason why the New Jersey Constitution should be interpreted differently from the federal constitution.

[2] The United States Supreme Court in *Rakas v. Illinois*, —— *U. S.* ——, 99 *S. Ct.* 421, 58 *L. Ed.* 2d 387 (1978), articulated the countervailing policies by stating that:

Each time the exclusionary rule is applied it exacts a substantial social cost for the vindication of Fourth Amendment rights. Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected. [*Id.* at ——, 99 *S. Ct.* at 427, 58 *L. Ed.* 2d at 397]

Only the State produced evidence at the hearings on the motions to suppress. One motion was directed to the evidence obtained upon the arrest and search of the defendant and another to the evidence acquired on the subsequent search of the automobile he had been driving. The following picture emerges from the record.

In May 1976, the Organized Crime Unit of the Union County Prosecutor's Office began conducting an investigation into bookmaking centered about Michael Verlingo whose operations were conducted in an apartment at 1381 North Avenue, Elizabeth. As part of that investigation the police had determined that Verlingo's phone, which was being monitored pursuant to a court order, was being used for transmission and receipt of bets on sporting events.

One caller, whose voice was later identified as that of the defendant Anthony Ercolano, had engaged in five to seven such telephone conversations prior to June 30, 1976. Detective Lynch, a member of the Organized Crime Unit who had been listening to these calls, recognized the same voice during a June 30, 1976 conversation. On that occasion the caller stated he would come the next day at 1:00 P.M. to collect money owed from previous bets. Detective Lynch reported this information to his superior, Sergeant Rowland, who, in turn, requested that members of the Elizabeth Police Department Confidential Squad be dispatched to 1381 North Avenue to determine the identity of the caller.

Detectives Malone and Brennan of the Elizabeth Police Department watched the premises the next day. They saw a white male, who was 5 feet 9, 180 pounds, age 45 to 50, with wavy black and gray hair and driving a new gray Lincoln Continental with license plate number 755 EUF, arrive at the appointed hour. He entered the apartment house and was seen leaving about five minutes later. A radio inquiry disclosed that the vehicle was registered in the name of Enrico Ercolano (the defendant's brother) of Jersey City.

On July 7, Detective Lynch, while monitoring the same phone, heard another conversation with the same caller. This

conversation indicated that the caller would be coming to the Verlingo apartment that evening at 8:00 P.M. Sergeant Rowland obtained a search warrant for the apartment and arranged for members of the Elizabeth Police squad and the Union County Prosecutor's Office to meet at the premises at 7:30 P.M. Upon arrival, they entered and searched the apartment.

Two detectives were dispatched to the front of the apartment house. About 8:00 P.M. the man who had appeared on July 1 drove up in the same Lincoln Continental. He was apprehended by the detectives as he entered the apartment house and, after refusing to give his name, was arrested for conspiracy to violate the gambling laws. A search conducted incident to his arrest produced several thousand dollars and disclosed that his name was Anthony Ercolano.

Ercolano was taken to Elizabeth Police Headquarters. The car, which was locked, was checked from the outside and taken to headquarters as well. An Assistant County Prosecutor who attended the raid instructed that the car be impounded for safety reasons since it was not known how long Ercolano would be detained. At police headquarters Ercolano refused to permit the car to be searched. Sergeant Rowland, according to his testimony, wanted to make certain nothing had happened to the vehicle en route to headquarters and inspected the car from the outside for the first time. On the armrest between the seats of the driver and passenger he saw some pieces of paper on which there were notations, which he thought might have something to do with gambling. He then opened the car door and found the papers were in fact gambling paraphernalia. Sergeant Rowland did not know why the car had not been searched initially outside the Verlingo apartment except for the Assistant Prosecutor's instructions to impound the vehicle.

As indicated previously, the defendant moved to suppress the evidence obtained from the searches of his person and of the vehicle. The trial court held that there was probable

cause to arrest the defendant and therefore the personal search, being incidental to the arrest, was proper. The defendant has not appealed from that ruling.

The trial court also held that the police had a right to impound the vehicle and that "they had a right to get a search warrant as to this vehicle, but they did not do either one of those." Finding, therefore, that there had been no impoundment and that the search was made without a warrant, it granted defendant's motion to suppress the evidentiary use of the gambling slips. The trial court made no specific factual findings. Its ruling implied that probable cause existed but that a warrant was necessary.

Whether the search of the Ercolano vehicle was reasonable or unreasonable within the Fourth Amendment context depends on resolution of three basic questions. First, did the police have probable cause to search the vehicle at the scene? Second, if so, could that be done without first obtaining a warrant? Finally, if the police could have conducted a warrantless search at the scene, is its validity vitiated because the car was removed to police headquarters before the search?

Although as previously noted, the trial court implied probable cause existed, it made no express finding on that issue. In examining the record we must keep in mind that reasonable or probable cause is not a technical concept but one which is drawn from "the factual and practical considerations of everyday life" as tested by reasonable persons. *Brinegar v. United States,* 338 *U. S.* 160, 175, 69 *S. Ct.* 1302, 1310, 93 *L. Ed.* 1879, 1890 (1949). It has been described as a "well grounded" suspicion. *State v. Burnett,* 42 *N. J.* 377, 387 (1964); *State v. Waltz,* 61 *N. J.* 83, 87 (1972).

Here, the police knew that an illegal gambling operation was being carried on at the Verlingo apartment. The raid of the apartment verified it was being used for illicit purposes, several phone calls seeking to place bets on baseball games having been received while the search was underway.

They were aware that the defendant participated in that illegal activity. This was evident from his telephone conversations with occupants of the Verlingo apartment, his appearance on July 1, 1976 to collect gambling moneys, and his reappearance on July 7, 1976 to pick up additional funds. The probable cause to arrest the defendant as a co-conspirator in a gambling activity is not questioned. Having probable cause to believe that the defendant was engaged in a gambling conspiracy, the police could reasonably conclude that the Lincoln Continental he was using to carry him to and from the Verlingo apartment in connection with the gambling operation might contain gambling paraphernalia. Automobiles transporting criminals in the course of criminal activity are likely instrumentalities of crime or the repositories of the tools and fruits of crime. See, e. g., Texas v. White, 423 U. S. 67, 96 S. Ct. 304, 46 L. Ed. 2d 209 (1975) (forged checks); Chambers v. Maroney, 399 U. S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970) (robbery); State v. LaPorte, 62 N. J. 312 (1973) (robbery). Cf. State v. Naturile, 83 N. J. Super. 563, 581 (App. Div. 1964) (dissenting opinion of Justice (then Judge) Sullivan). Particularly is this so where the suspected crime involves organized gambling, which entails the continuing and constant movement of individuals transporting gambling slips, writings, moneys and other paraphernalia. Cf. State v. Snow, 77 N. J. 459 (1978). The use of automobiles in gambling is commonplace as is the presence of gambling contraband in the automobiles used by gamblers. Under all these circumstances, one could reasonably conclude that the police had probable cause to search the vehicle.

The plurality, in addition to asserting that the evidence could not justify a finding of probable cause, claims that since the Prosecutor has not contended on this appeal that probable cause did exist,[3] this Court should ignore the appar-

---

[3]The Prosecutor's brief asserts that once the defendant was arrested the exigencies of the situation dictated that the police act, that when

ent existence of the factual and legal basis justifying the search. This Court should not hesitate to consider a singularly material issue concerning the admissibility of evidence in a criminal proceeding where the facts generating that issue are patent in the record even though they may not have been crystallized by the parties or addressed by the court below. To contend that exclusion of such evidence will act as a deterrent to police action even though defendant's constitutional rights have not been violated is incomprehensible.

The plurality would also preclude consideration of whether probable cause existed by restricting the Court's assessment of the police activity to the subjective intent expressed by the Assistant County Prosecutor that the automobile had been impounded for safety reasons. This is a most unrealistic approach. The reasons expressed by the Assistant County Prosecutor ought not to be taken at face value. It seems evident that there would have been no reason whatsoever to impound the car, let alone that offered by the Assistant County Prosecutor, if the car had not itself been used in furtherance of the criminal activity of the defendant and been a likely source of criminal materials. In no sense was the impoundment of the vehicle here comparable to that involving a motorist arrested for a non-criminal offense. *State v. Slockbower,* 79 *N. J.* 1 (1978).

In the context of this case it appears simply that the police may very well have selected or voiced the wrong reason for seizure and search of the vehicle. The Court, in assessing the reasonableness of the search, should not be confined to the explanations made by the participating officers. What is crucial is whether the facts known to the police clearly and

---

the search was made at headquarters the papers were in plain view, and that the search was thus proper under the doctrine of inevitable discovery. See *Government of the Virgin Islands v. Gereau,* 502 *F.* 2d 914 (3d Cir. 1974). The plurality takes the curious position that the plain view doctrine cannot be applied when the police, while on the outside at a place where they may lawfully be, look into a car for investigative purposes. 79 *N. J.* at p. 35.

objectively disclosed probable cause for the police actions and whether the officers acted upon those facts. It is not germane to the validity of the search that the officers believed different reasons justified the search other than their knowledge before the search of obvious facts demonstrating probable cause.[4]

Substantial authority exists for the position advocated here. In *Sirimarco v. United States,* 315 *F.* 2d 699 (10th Cir.), *cert.* den. 374 *U. S.* 807, 83 *S. Ct.* 1696, 10 *L. Ed.* 2d 1032 (1963), the court, though rejecting the government's contention that a warrantless search was incident to a lawful arrest, sustained the search as one within the automobile exception of *Carroll v. United States,* 267 *U. S.* 132, 45 *S. Ct.* 280, 69 *L. Ed.* 543 (1925). Posing the question as "whether or not it is necessary to explore the agent's intent," 315 *F.* 2d at 701, the court ruled as follows:

> The legality of a search cannot be balanced against the good faith of the searcher or the extent or correctness of his legal knowledge. An unlawful search, though made in the honest belief of right, remains unlawful and its fruits remain forbidden. A lawful search, though not made under subjective claim or knowledge of right, remains lawful and evidence so obtained is admissible. Here, the agent took control of the car, searched it and seized contraband. He intended to do what he did and his actions constituted a continuous course of conduct. The conduct was justified because the agent had probable cause to seize the vehicle and the legality of his actions are not affected by his subjective beliefs. [*Id.* at 702]

Accord, *White v. United States,* 448 *F.* 2d 250, 254 (8th Cir. 1971), *cert.* den. 405 *U. S.* 926, 92 *S. Ct.* 974, 30 *L. Ed.*

---

[4]The plurality contends that the purported reasons of the Assistant Prosecutor and not the facts govern the reasonableness of a search. Its sole authority for this position is *Jones v. United States,* 357 *U. S.* 493, 78 *S. Ct.* 1253, 2 *L. Ed.* 2d 1514 (1958). It is inapposite. There the police searched a house without a warrant when they were looking for the defendant. The search was invalidated because the facts did not justify the search of the house. Here, to the contrary, a court could reasonably find that the facts did justify the search of the car.

2d 798 (1972); *Guzman v. Estelle,* 493 *F.* 2d 532, 536 n. 13 (5th Cir. 1974); *United States v. Vital-Padilla,* 500 *F.* 2d 641, 644 (9th Cir. 1974) (finding probable cause for arrest).

In *United States v. Capra,* 372 *F. Supp.* 600 (S. D. N. Y. 1973), the police searched an automobile for narcotics at a garage to which the car had been moved after the defendant's arrest. The government attempted to justify the search either as incident to the arrest or as an inventory search, but Judge Frankel could find "little or no support" for these justifications. Nevertheless, noting that "their [the officers'] rationale for their right to seize and search the vehicle is not conclusive," he sustained the search under the principle of probable cause. 372 *F. Supp.* at 602, 603 & n.2. The Court of Appeals affirmed the validity of the automobile search although a new trial was ordered on other grounds. 501 *F.* 2d 267, 279–280 (2d Cir. 1974).

Justice Hall in *State v. Romeo,* 43 *N. J.* 188 (1966), cautioned that

[c]ourts ought not to insist that policemen act on necessary spurs of the moment with all the knowledge and acuity of constitutional lawyers. The fundamental requirement of the Fourth Amendment is reasonableness. Granting requisite adherence to the basic essentials of that concept assuring proper recognition of the individual liberties sought to be safeguarded thereby, the validity of law enforcement conduct should not be judicially tested by *post facto* technicalities and formalisms of no vital importance. [*Id.* at 206]

To label the search as unreasonable and suppress relevant evidence, simply because the police who knew the facts supporting lawful seizure and search of the vehicle selected the wrong theory, serves no salutary purpose, constitutional or otherwise.

Once probable cause is found to exist, neither the failure to obtain a warrant before searching the Ercolano vehicle nor the delay in making the search until after its removal to police headquarters rendered the search unreasonable. This becomes apparent when recognition is given to an underlying thesis of the Fourth Amendment — one's right to privacy.

Consistent with this premise there has developed a special niche for automobile searches. Motor vehicle searches, generally, are not subject to the same warrant strictures applicable to houses or other buildings. In *South Dakota v. Opperman,* 428 *U. S.* 364, 96 *S. Ct.* 3092, 49 *L. Ed.* 2d 1000 (1976), Chief Justice Burger, writing for a majority of the Court, commented:

> The reason for this well-settled distinction is twofold. First, the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible. * * * But the Court has also upheld warrantless searches where no immediate danger was presented that the car would be removed from the jurisdiction. * * * Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. [428 *U. S.* at 367, 96 *S. Ct.* at 3096, 49 *L. Ed.* 2d at 1004; citations and footnote omitted]

Modern rules governing automobile searches evolved because of the realistic appraisal of the more limited expectation of privacy of motor vehicles in public and quasi-public places as well as because of their mobility.[5] These rules sanc-

---

[5]The United States Supreme Court has very recently reemphasized the difference between a search of an automobile and a home in *Rakas v. Illinois,* —— *U. S.* ——, 99 *S. Ct.* 421, 58 *L. Ed.* 2d 387 (1978). In its analysis of whether an automobile search or seizure violated the Fourth Amendment the Court focused on the issue of whether a person who seeks "the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Id.* at ——, 99 *S. Ct.* at 430, 58 *L. Ed.* 2d at 401. The Court noted that "[w]e have on numerous occasions pointed out that cars are not to be treated identically with houses or apartments for Fourth Amendment purposes." *Id.* at ——, 99 *S. Ct.* at 433, 58 *L. Ed.* 2d at 404. Mr. Justice Powell, in a concurring opinion joined in by the Chief Justice, emphasized the distinction between an expectation of privacy in an automobile and elsewhere. He referred to their presence on public streets, their being serviced in public places, their being parked in public places, the high visibility of their interiors, and their extensive regulation and inspection. *Id.* at —— & n. 2, 99 *S. Ct.* at 436 & n. 2, 58 *L. Ed.* 2d at 408 & n. 2.

tioning warrantless automobile searches are substantially more expansive than those enunciated in *Carroll v. United States,* 267 *U. S.* 132, 45 *S. Ct.* 280, 69 *L. Ed.* 543 (1925), the Supreme Court's initial opinion on warrantless motor vehicle searches. In *Carroll* the Court enunciated the principle that warrantless searches of vehicles were proper if the officer undertaking the search had probable cause to believe that the automobile contained material properly subject to seizure. Chief Justice Taft, writing for the Supreme Court, pointed out that:

[T]he true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. The 4th Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens. [267 *U. S.* at 149, 45 *S. Ct.* at 283, 69 *L. Ed.* at 549]

In that connection

'the guaranty of freedom from unreasonable searches and seizures by the 4th Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. [267 *U. S.* at 153, 45 *S. Ct.* at 285, 69 *L. Ed.* at 551]

Thus, the Chief Justice drew a sharp distinction between the need for a warrant before searching a house as distinguished from a motor vehicle. He also pictured probable cause not as a technical concept, but rather in terms of whether the searching officer reasonably believed such contraband existed in the vehicle. He concluded that:

The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported. [267 *U. S.* at 155–156, 45 *S. Ct.* at 286, 69 *L. Ed.* at 552]

The *Carroll* rule was extended in *Chambers v. Maroney,* 399 *U. S.* 42, 90 *S. Ct.* 1975, 26 *L. Ed.* 2d 419 (1970), to cover searches for evidence relevant to the wrongdoing in addition to contraband. This extension comported with the primary purpose of searches, namely, to obtain relevant evidence to assist the fact-finder in ascertaining the truth. See *State v. Bisaccia,* 45 *N. J.* 504, 509 (1965). Furthermore, *Chambers* expanded the *Carroll* rule to provide that if the police were entitled to make a warrantless search at the scene of defendant's arrest, removal of the vehicle to police headquarters would not invalidate a warrantless search made there.

In *Chambers* the police stopped a station wagon which matched the description of one that had been involved in a gas station robbery. After arrest of the occupants, the car was taken to police headquarters and there searched. The search led to the discovery of two revolvers and other incriminating evidence. The Supreme Court, rejecting motions to suppress, held that:

For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.
* * * The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an *immediate* search without a warrant and the car's immobilization until a warrant is obtained. The same consequences may not follow where there is unforeseeable cause to search a house. * * * But as Carroll * * * held, for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars. [399 *U. S.* at 52, 90 *S. Ct.* at 1981, 26 *L. Ed.* 2d at 428–429; footnote omitted]

See also *Trotter v. Stephens,* 241 *F. Supp.* 33 (E. D. Ark. 1965), aff'd *sub nom. Harris v. Stephens,* 361 *F.* 2d 888 (8th Cir. 1966), *cert.* den. 386 *U. S.* 964, 87 *S. Ct.* 1040, 19 *L. Ed.* 2d 113 (1967); Annot., "Modern status of rule as to validity of nonconsensual search and seizure made without warrant after lawful arrest as affected by lapse of time between, or difference in places of, arrest and search," 19 *A. L. R.* 3d 727, 746, 757 (1968).

That probable cause to search a vehicle on the scene is not lost or dissipated because the search is conducted at a later time at a more convenient place is further illustrated in *Cardwell v. Lewis,* 417 *U. S.* 583, 94 *S. Ct.* 2464, 41 *L. Ed.* 2d 325 (1974). The police, having obtained a warrant, arrested the defendant when he appeared at a police office. They towed the defendant's car, which was in a commercial parking lot a half block away, to a police impoundment area. The next day an examination of the car's exterior revealed that the tread of a tire matched an impression at the scene of the crime and paint on the fender was similar to that of the victim's car. The Supreme Court, in upholding the warrantless search stated:

We do not think that, because the police impounded the car prior to the examination, which they could have made on the spot, there is a constitutional barrier to the use of the evidence obtained thereby. [417 *U. S.* at 593, 94 *S. Ct.* at 2470, 41 *L. Ed.* 2d at 336]

Justice Sullivan in *State v. LaPorte,* 62 *N. J.* 312 (1973), discussed the same problem. After the defendant was arrested, his car was impounded and towed to police headquarters where it was searched. Items related to an armed robbery were uncovered. He wrote:

The police had the right to seize defendant's automobile since it had been reported as an instrumentality used in the robbery. The search of it was clearly justified since the officers had probable cause to believe that it contained evidence of the Roselle Park armed robbery (as it actually did). * * * Since the police had probable cause to search defendant's automobile, and the circum-

stances were such that it was not practicable to secure a warrant, their actions in seizing the vehicle, bringing it to police headquarters and searching it there, were not unreasonable. [*Id.* at 316]

The Supreme Court has recently decided a case strikingly similar to that before us in *Texas v. White,* 423 *U. S.* 67, 96 *S. Ct.* 304, 46 *L. Ed.* 2d 209 (1975). The police had there been advised that an individual had attempted to negotiate four checks on a nonexistent account at a bank. They had been given a description of the suspect and the automobile he was driving. Ten minutes later they were told that an individual fitting that description and driving an automobile matching the one described had attempted to pass fraudulent checks at a second bank. The police came to the scene and arrested the individual. He was driven to the police station and his car was brought there too.

Despite his refusal to consent to a search of his car, the officers went ahead and found four checks that corresponded with those that he had attempted to pass at the first bank. The Supreme Court reversed a finding by the Texas Court of Criminal Appeals that the seizure of the checks violated the defendant's Fourth Amendment rights. The Supreme Court in a *per curiam* opinion stated:

In Chambers v. Maroney we held that police officers with probable cause to search an automobile on the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant. There, as here, "[t]he probable-cause factor" that developed on the scene "still obtained at the station house." 399 *U. S.,* at 52, 90 *S. Ct.* 1975, 26 *L. Ed.* 2d 419. The Court of Criminal Appeals erroneously excluded the evidence seized from the search at the station house in light of the trial judge's finding, undisturbed by the appellate court, that there was probable cause to search respondent's car. [423 *U. S.* at 68, 96 *S. Ct.* at 305, 46 *L. Ed.* 2d at 211–212]

These cases, beginning with *Chambers v. Maroney, supra,* clearly demonstrate that, when the police have reasonable cause to search a vehicle at the scene of the defendant's arrest, they may subsequently search the automobile after its re-

moval to police headquarters without obtaining a warrant. See *State v. McCarthy,* 130 *N. J. Super.* 540, 544–545 (App. Div. 1974); *State v. Hannah,* 125 *N. J. Super.* 290, 295 (App. Div. 1973), certif. den. 64 *N. J.* 499 (1974). Consequently, if the knowledge possessed by the police at the time they arrested Ercolano was sufficient to generate probable cause to search the vehicle at that time, the subsequent warrantless search conducted at police headquarters satisfied the requirements of the Fourth Amendment.

The plurality would prohibit all warrantless automobile searches, even though probable cause existed, if when the police came upon the vehicles they were not readily movable at that moment (irrespective of whether they were located on public or private property). 79 *N. J.* at 45. In no case has the Supreme Court so reasoned or made such a holding. The plurality derives this odd doctrine substantially from its interpretation of *Coolidge v. New Hampshire,* 403 *U. S.* 443, 91 *S. Ct.* 2022, 29 *L. Ed.* 2d 564 (1971). At issue there was the propriety of a police search of defendant's automobile in connection with an ongoing murder investigation that had been proceeding for several weeks. After having obtained warrants for the defendant's arrest and search of his automobile, the police arrested the defendant in his home and took him to police headquarters. Some two and a half hours later, the police had the defendant's car, which had been parked in his driveway, towed to headquarters. The car was searched on three occasions, initially two days after it was seized, again eleven months later, and finally three months after that.

Mr. Justice Stewart, writing for five members of the Court, held the warrant was invalid because the official who had signed it was the chief investigator and prosecutor and not a magistrate. As the plurality correctly notes, Mr. Justice Stewart did observe that this was not a case in which "it is not practicable to secure a warrant * * *." What the plurality fails to mention is that Mr. Justice Stewart was reflecting the views of only four members of the Court in that part of his opinion. Furthermore, a fair

reading of that opinion discloses that he was concerned with the mobility factor in an extremely limited sense. He emphasized that the automobile was on private property under the guard of two police officers, that the defendant Coolidge was in jail, and that his wife was miles away in the company of two plainclothesmen. He concluded that under those circumstances "[w]e attach no constitutional significance to this sort of mobility."[6] 403 *U. S.* at 461 n. 18, 91 *S. Ct.* at 2035 n. 18, 29 *L. Ed.* 2d at 580 n. 18.

Moreover, the plurality in this case has seen fit to discard the prevailing opinion in *Cardwell v. Lewis, supra,* upholding a search of a vehicle at police headquarters following its removal after the defendant's arrest, from a commercial parking lot. Other courts have undertaken a more searching attempt to reconcile *Coolidge* and *Cardwell* and have concluded, as *Cardwell* did, that the significant distinction between the two cases is not whether the car was moving or readily movable, but whether it was located in a public or semi-public place or on private property at the time it was seized or searched. Compare *United States v. Pruett,* 551 *F.* 2d 1365 (5th Cir. 1977) (search of car invalidated where defendants were already arrested, car was parked "at the residence," and agents had a warrant to search the house) with *Haefeli v. Chernoff,* 526 *F.* 2d 1314 (1st Cir. 1975) (upholding search of car parked on public street after defendant arrested in office); *United States v. Vento,* 533 *F.* 2d 838 (3d Cir. 1976) (upholding search of car parked on public street after defendant arrested away from his car); *United States v. Ramirez,* 513 *F.* 2d 72 (5th Cir.), *cert.* den. 423 *U. S.* 912, 96 *S. Ct.* 215, 46 *L. Ed.* 2d 140 (1975) (upholding search of truck at filling station after arrest of defendants at cafe); *United States v. Pheaster,* 544

_____

[6]It is significant that Mr. Justice Stewart joined the majority in *Rakas v. Illinois,* —— *U. S.* ——, 99 *S. Ct.* 421, 58 *L. Ed.* 2d 387 (1978), which reiterated the reduced expectation of privacy with respect to an automobile in a public place.

*F.* 2d 353 (9th Cir. 1976), *cert.* den. 429 *U. S.* 1099, 97 *S. Ct.* 1118, 51 *L. Ed.* 2d 546 (1977) (search upheld where defendant arrested and car subsequently searched at FBI garage) ; *United States v. McClain,* 531 *F.* 2d 431 (9th Cir.), *cert.* den. 429 *U. S.* 835, 97 *S. Ct.* 102, 50 *L. Ed.* 2d 101 (1976) (search upheld where defendant arrested and car searched thereafter in hotel parking lot) ; and *United States v. Woods,* 568 *F.* 2d 509 (6th Cir.), *cert.* den. 435 *U. S.* 972, 98 *S. Ct.* 1614, 56 *L. Ed.* 2d 64 (1978) (search upheld where car was parked in motel parking lot and searched after arrest of defendant). But see *United States v. Kelly,* 547 *F.* 2d 82 (8th Cir. 1977) (search invalidated where car was parked in motel parking lot and searched after defendant's arrest; alternative holding).

The reason for this distinction, as summarized by the Chief Justice in *South Dakota v. Opperman, supra,* is two-fold. The first is the diminished expectation of privacy with respect to a car parked in a public or quasi-public place as opposed to a purely private location. Secondly, when a car is parked in a public or quasi-public place, access to it can often not be restricted, and there is an increased danger that the vehicle will be moved or damaged and the evidence lost.

The plurality erroneously analyzes the need for a warrant in terms of mobility rather than accessibility, despite the fact that once a suspect is arrested, his car is only "mobile" under a tortured definition of mobility. See *Texas v. White, supra.* Compare *United States v. Kelly, supra,* with *United States v. Helberg,* 565 *F.* 2d 993 (8th Cir. 1977) (search upheld where car seized in parking lot and searched at headquarters; defendant not present but not yet arrested) and *Brewer v. Wolff,* 529 *F.* 2d 787, 792 (8th Cir. 1976) (search upheld even though car's mobility was "substantially diminished" once defendant was arrested, handcuffed, and placed in back seat of police cruiser). The effect of a suspect's arrest on his car's mobility is the same irrespective

of whether he was arrested in his car, near his car, or a substantial distance from his car.

Claiming that the police knew that the defendant had been visiting Verlingo using the same automobile, the plurality contends a warrant to search the vehicle should have been obtained before the defendant's arrival on July 7, 1976. But prior to that arrival, the police only knew that the unknown caller had used that Lincoln Continental owned by one Enrico Ercolano on July 1, 1976. They did not know that on July 7, 1976 the unknown caller, whose identity was ascertained after his arrest, would be driving the same vehicle and, although as the majority concedes the police "had probable cause to believe that he [the defendant] was implicated in the conspiracy," it does not follow that they would have been able to obtain a search warrant for the Lincoln Continental. *Cf. United States v. Vento*, 533 F. 2d 838, 865–866 (3d Cir. 1976) (not required to obtain warrant where police did not know whether suspect would arrive in his own car or in another). Moreover, merely because the police anticipated that the suspect would implicate himself in criminal activity by arriving at the scene and entering the apartment, and that this would occur directly in their presence, did not impose upon them an obligation to obtain a search warrant in advance of the event. They were entitled to rely upon the predicated occurrence of a criminal act which they would witness as the basis for arresting the defendant and searching him and the automobile he was using.

To suppress evidence which has not in fact been obtained in violation of the Fourth Amendment unjustifiably rewards a defendant and penalizes society. In terms of the Fourth Amendment, a vehicular search on a public street cannot sensibly be held unreasonable when ample cause existed for that search and was known to the officer who made the search, nor is that cause dissipated by the removal of the automobile to police headquarters where the search is made. It could not even reasonably be contended that privacy

interests were unjustifiably invaded where, as here, the seized evidence was in plain view.

I would reverse and remand to the trial court, with leave to the parties to supplement the record, for the trial court to make findings of fact and conclusions of law to determine whether there was probable cause for the search of the automobile, whether facts indicating such probable cause were known to the police responsible for this investigation and whether the automobile was searched under circumstances related to such probable cause.

Chief Justice Hughes joins in this opinion.

HANDLER, J., dissenting. I believe that the hearing on the motion to suppress evidence at the trial level was misdirected and misconceived by the court as well as the parties. I agree therefore with the recommendation set forth in the dissenting opinion of Justice Schreiber that this matter be remanded for another hearing on the motion. I would redefine the issues and require that the matter proceed to the end that the issues, as correctly formulated, be properly resolved.

No one quarrels that the arrest of the defendant Ercolano was valid. He was known to be criminally implicated in the gambling operations being conducted at 1381 North Avenue in Elizabeth. His criminal involvement was adequately established through the investigation and surveillance of the law enforcement officers. The police timed the search of the apartment pursuant to a lawful search warrant with the anticipated arrival of defendant. When Ercolano was arrested, he had just driven up to the premises, parked his car and come into the apartment building. There is not the slightest doubt that in this total factual context, Ercolano entered this gambling den to engage in illegal gambling. The officers had abundant probable cause to believe that he was then, or on the verge of, committing a gambling crime in their presence. They quite properly and lawfully placed him under arrest. *United States v. Watson,* 423 *U. S.* 411,

96 *S. Ct.* 820, 46 *L. Ed.* 2d 598 (1976); see *United States v. Santana,* 427 *U. S.* 38, 96 *S. Ct.* 2406, 49 *L. Ed.* 2d 300 (1976); *Gerstein v. Pugh,* 420 *U. S.* 103, 95 *S. Ct.* 854, 43 *L. Ed.* 2d 54 (1975); *Draper v. United States,* 358 *U. S.* 307, 79 *S. Ct.* 329, 3 *L. Ed.* 2d 327 (1959); *Carroll v. United States,* 267 *U. S.* 132, 45 *S. Ct.* 280, 69 *L. Ed.* 543 (1925); cf. *Henry v. United States,* 361 *U. S.* 98, 80 *S. Ct.* 168, 4 *L. Ed.* 2d 134 (1959).

The pointed inquiry at the motion to suppress hearing should have been whether the search of the automobile, which defendant used to get to the scene in order to complete his gambling business, flowed from and was connected with his lawful arrest for criminal conduct occurring in the presence of law enforcement officers.

Gambling is a peripatetic crime. *State v. Snow,* 77 *N. J.* 459 (1978). It involves on a daily, recurring time table the ceaseless movement of persons, records, paraphernalia and moneys. The automobile, only slightly less than the telephone, is as vital to the illicit commerce of organized gambling as any other device or instrumentality one can imagine. The automobile must invariably loom large as an inescapable object of police attention when it is used regularly by persons known to be engaged actively in unlawful gambling. If this be so — but unfortunately this was not developed or addressed on the motion to suppress — then it would appear entirely reasonable for the apprehending officers, on the strength of the probable cause to arrest defendant, to have undertaken a search of the automobile contemporaneous with defendant's arrest and the search of his person. Compare *United States v. Watson, supra.*

Aside from whether an automobile is subject to special search and seizure rules under the Fourth Amendment, as emphasized by the dissent of Justice Schreiber, *Ante* at 58–60 and discussed in the recent case, *Rakas v. Illinois,* —— *U. S.* ——, 99 *S. Ct.* 421, 58 *L. Ed.* 2d 387 (1978); also *South Dakota v. Opperman,* 428 *U. S.* 364, 96 *S. Ct.* 3092, 49 *L. Ed.* 2d 1000 (1976); *Cardwell v. Lewis,* 417

U. S. 583, 94 S. Ct. 2464, 41 L. Ed. 2d 325 (1974), "[a]uto-mobiles transporting criminals in the course of criminal ac-tivity are likely instrumentalities of crime or the repositories of the tools and fruits of crime." *Ante* at 58. When so used, cars become the proper focus of police action, including seizure and search, provided this is accomplished under the factual umbrella of the criminal acts justifying the appre-hension of the occupants of such vehicles. *Texas v. White,* 423 U. S. 67, 96 S. Ct. 304, 46 L. Ed. 2d 209 (1975); *Chambers v. Maroney,* 339 U. S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970) ; *State v. La Porte,* 62 N. J. 312 (1973); *cf. United States v. Watson, supra.*

An automobile, which can be lawfully and reasonably searched because of its factual tie-in to the criminal conduct of a defendant subjecting him to arrest, can be removed to a more secure and convenient place by the police for the purpose of conducting such a search. Many cases have so held or strongly indicated. See *e. g., Texas v. White, supra; Cardwell v. Lewis, supra; Chambers v. Maroney, supra; United States v. Pheaster,* 544 F. 2d 353 (9 Cir. 1976), cert. den. 429 U. S. 1099, 97 S. Ct. 1118, 51 L. Ed. 2d 546 (1977); *United States v. Vento,* 533 F. 2d 838 (3 Cir. 1976). The reasonableness of searches under such circum-stances has been recognized by our own courts. *State v. La Porte, supra; State v. Hannah,* 125 N. J. Super. 290, 295 (App. Div. 1973), certif. den. 64 N. J. 499 (1974); *cf. State v. McCarthy,* 130 N. J. Super. 540, 544–545 (App. Div. 1974).

This case would appear to fit within the exigent circum-stances exception to the warrant requirement of the Fourth Amendment as applied in the foregoing body of decisional authority. The trial court was confronted with evidence ob-tained from the search of an automobile which shortly be-fore had been removed to police headquarters from a public street immediately following the arrest of the defendant-driver. That arrest was based upon criminal acts in the officers' presence, confirming defendant's involvement in a

long-standing, illegal, organized gambling operation, in the course of which it had become known that he used this car to conduct his gambling business and, because of his suspected role in the gambling ring, that there was a likelihood he would have gambling contraband on his person, among his personal effects or in his automobile.

Inexplicably the motion to suppress was not tried on this basis. I think it appropriate that the matter therefore be remanded so that the parties may confront these issues and adduce and develop relevant evidence under correct legal principles governing the search of the automobile.

PASHMAN, J., concurring in the result.

*For affirmance*—Justices SULLIVAN, PASHMAN, and CLIFFORD and Judge CONFORD—4.

*For reversal and remandment*—Chief Justice HUGHES and Justices SCHREIBER and HANDLER—3.